# EXHIBIT 1

State v. Long, 293 N.C. 286, 237 S.E.2d 728 (1978)

*293 N.C. 286, \*; 237 S.E.2d 728, \*\*;*
*1977 N.C. LEXIS 933, \*\*\**

STATE OF NORTH CAROLINA v. RONNIE WALLACE LONG

No. 2

SUPREME COURT OF NORTH CAROLINA

293 N.C. 286; 237 S.E.2d 728; 1977 N.C. LEXIS 933

October 11, 1977, Filed

**PRIOR HISTORY:** [\*\*\*1] Appeal by defendant from *Wood, J.*, 27 September 1976 Criminal Session of Cabarrus Superior Court.

Defendant was charged in separate bills of indictment with first degree rape and first degree burglary. The cases were consolidated for trial and defendant entered pleas of not guilty. The jury returned verdicts of guilty as charged and the trial judge entered judgments imposing a life sentence on each charge.

The State offered evidence tending to show that on the evening of 25 April 1976, Mrs. Gray Bost, a fifty-four-year-old widow, was alone in her home at 158 South Union Street, Concord. She walked into her den around 9:30 p.m. and was grabbed from behind by a black man wearing a black leather jacket, black gloves, and a green toboggan cap covering his ears but not his face. He threw her onto the floor, put a knife at her throat, and demanded money. He pushed her into her bedroom to her bed, where she rummaged through her pocketbook only to find that her money was gone. He then shoved her into a lighted hall, threw her onto the floor, and raped her. Other sordid details concerning defendant's acts, not necessary to decision, are omitted. The assault continued until [\*\*\*2] the phone rang, at which time the assailant jumped up and left. Mrs. Bost then ran unclothed out the back door to her neighbor's home, and was rushed by ambulance to the hospital.

A gynecologist found live active spermatozoa in her vagina, as well as numerous scratches and bruises on her face and body.

Defendant offered evidence tending to show that on Sunday, 25 April 1976, Ronnie Long attended a class reunion planning meeting. He made arrangements with friends to go to Charlotte later that night. Mrs. Elizabeth Long, defendant's mother, testified that her son was at home from around 8:30 p.m. until after 10:00 p.m. Mrs. Long, the defendant and defendant's girl friend, Janice Spears, participated in a phone conversation which lasted about forty-five minutes. Ms. Spears indicated that she called the Long residence at 9:00 p.m. She said that she and her son talked with the defendant and Mrs. Long until 9:45 p.m. Shortly after 10:00 p.m., defendant's father returned home with the car and defendant left for a party in Charlotte.

Other facts relevant to the decision will be set out in the opinion.

**DISPOSITION:** No error.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant sought review of his conviction by the Cabarrus Superior Court (North Carolina) of first degree rape and first degree burglary.

**OVERVIEW:** Defendant contended that there had been numerous errors committed at his

trial for rape and burglary. The court determined that the victim's out-of-court identification of defendant as well as the photo identification were not impermissibly suggestive. In both instances the victim readily identified defendant and stated that she recognized him from her home and as her assailant. The court found that the trial court judge's determination that defendant's consent to the search of his vehicle was voluntary was supported by competent evidence and that the admission into evidence of the results of the search was proper. The court found that admittance into evidence of a shoeprint from the scene of the crime that matched the shoes worn by defendant upon his arrest was permissible. The court affirmed defendant's conviction.

**OUTCOME:** The court affirmed defendant's conviction of rape and burglary, both in the first degree, having determined that there was no error at trial and that the verdict was the result of a fair and unbiased trial.

**CORE TERMS:** identification, shoe prints, courtroom, pretrial, voir dire, confrontation, impermissibly suggestive, custody, arrest, porch, assailant, coercion, rape, identification procedures, mistaken identification, present case, admissibility, in-custody, in-court, station, evening, Criminal Law, roof, police station, photographic identification, consent to search, right to refuse, toboggan, tending, connect

**LEXISNEXIS(R) HEADNOTES**
Criminal Law & Procedure > Eyewitness Identification > Fair Identification Requirement
Criminal Law & Procedure > Eyewitness Identification > Showup Identifications
*HN1* Each case must be considered on its own facts, and convictions based on eyewitness identification at trial following a pretrial identification will be set aside on that ground only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice.

Criminal Law & Procedure > Eyewitness Identification > Showup Identifications
*HN2* The following factors are to be considered in evaluating the likelihood of mistaken identification. These are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Warrants
Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Vehicle Searches > General Overview
Governments > Legislation > Statutory Remedies & Rights
*HN3* When a person voluntarily consents to a search by officers, he cannot later complain that his constitutional and statutory rights were violated and that one who so consents waives the necessity of a valid search warrant.

Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Consent to Search > Sufficiency & Voluntariness
Criminal Law & Procedure > Interrogation > Voluntariness
Evidence > Procedural Considerations > Burdens of Proof > Allocation
*HN4* For a consent search to be valid, the State has the burden of proving that consent

was freely and voluntarily given, without coercion, duress or fraud. Although the State has the burden of proving that consent was voluntarily given, Miranda is inapplicable to searches and seizures, and it is not necessary to inform a suspect that he has the right to refuse consent.

Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Consent to Search > Sufficiency & Voluntariness
Criminal Law & Procedure > Interrogation > Miranda Rights > Right to Counsel During Questioning
Criminal Law & Procedure > Counsel > Right to Counsel > General Overview

**HN5** A specific warning as to Fourth Amendment rights is not necessary to validate consent to a search after the defendant is in custody, and that this is especially so where a defendant has been warned of his right to remain silent and right to counsel under Miranda. There is no definitive distinction between pre-custody and in-custody consent searches. Rather, the added factor of custody is a circumstance to be taken into account with all other surrounding circumstances in determining whether consent was freely and voluntarily given in the absence of coercion. Upon the voir dire to determine the voluntariness of defendant's consent to a search of his property, the weight to be given the evidence is peculiarly a determination for the trial judge, and his findings are conclusive when supported by competent evidence.

Evidence > Scientific Evidence > Crime Scene
Evidence > Scientific Evidence > Fingerprints & Footprints

**HN6** Evidence of shoe prints leading to or from the scene of the crime and corresponding with those of the accused may be admitted into evidence as tending more or less strongly to connect the accused with the crime.

## HEADNOTES

### 1. Criminal Law § 66.12 -- pretrial courtroom identification [***3] -- no impermissible suggestiveness

A rape victim's identification of defendant at an unrelated district court proceeding was not the result of impermissibly suggestive procedures, testimony of the pretrial identification was properly admitted, and the pretrial identification did not taint the victim's in-court identification of defendant where officers asked the victim to sit in the courtroom and see if she could recognize the man who raped her; the officers made no suggestion that defendant or anyone else in particular would be in the courtroom; there were approximately sixty people in the courtroom and as many as a dozen black males; when defendant walked down the aisle past her to approach the bench, the victim immediately recognized him as her assailant and, without prompting, she mentioned to police that defendant was the man.

### 2. Criminal Law § 66.9 -- photographic identification -- no impermissible suggestiveness

A rape victim's photographic identification of defendant at the police station was not the result of impermissibly suggestive procedures where officers showed her six or eight photographs; the victim identified defendant's photograph without prompting; [***4] officers did not point out any particular picture to her; and the victim testified that she recognized defendant from seeing him at the time of the assault.

### 3. Criminal Law §§ 66.9, 66.12 -- pretrial confrontation -- no likelihood of mistaken identification

There was no likelihood of mistaken identification in a rape victim's photographic and pretrial courtroom identifications of defendant where the victim positively identified defendant as her assailant; she testified that lights were on in her den, bedroom and hall, and that she got a clear look at defendant's face in all three rooms; her description of defendant on the evening of the crime was similar to his actual appearance; at her initial confrontation of defendant in the district courtroom, she recognized defendant as soon as he walked past her to approach the bench; and the lapse of time between the crime and the initial confrontation was fifteen days.

### 4. Searches and Seizures § 2 -- consent to search -- burden of proof

For a consent search to be valid, the State has the burden of proving that consent was freely and voluntarily given, without coercion, duress or fraud.

### 5. Searches and Seizures [***5] § 2 -- in-custody consent for search -- warning of right to refuse consent

Officers are not required to advise a suspect of his right to refuse consent for a search in order to validate either pre-custody or in-custody consent for the search; however, the added factor of custody is a circumstance to be taken into account with all other surrounding circumstances in determining whether consent was freely and voluntarily given in the absence of coercion.

### 6. Criminal Law § 61.2 -- shoe prints

Evidence of shoe prints leading to or from the scene of the crime and corresponding with those of the accused may be admitted into evidence as tending more or less strongly to connect the accused with the crime.

### 7. Criminal Law § 61.2 -- shoe prints -- time of impression

Testimony that a shoe print lifted from the front porch banister of a rape victim's home corresponded with shoes taken from defendant at the time of his arrest was competent as tending to connect defendant with the rape, although officers admitted on cross-examination that the shoe print could have been made a month prior to the crime, since the question whether the shoe print could have been impressed [***6] only at the time of the crime was a question of fact for the jury, not a question of law to be determined by the court prior to the admission of the evidence.

**COUNSEL:** *Attorney General Rufus L. Edmisten and Associate Attorney Ben G. Irons, II for the State.*

*Karl Adkins for defendant appellant.*

**JUDGES:** Moore, Justice.

**OPINION BY:** MOORE

### OPINION

[*289] [**730] Appellant's first assignment of error is based on the contention that pretrial identification procedures were so impermissibly suggestive that admission of the in-court identification violated due process of law. This contention questions the admissibility of testimony concerning Mrs. Bost's identification of the defendant at an unrelated district court proceeding, as well as the admissibility of Mrs. Bost's in-court identification of defendant. The defendant contends that the circumstances surrounding the extrajudicial identification procedures used by police to procure his identification were so unduly prejudicial and

suggestive as fatally to taint his conviction. "This is a claim which must be evaluated in light of the totality of surrounding circumstances." *Simmons v. United States*, 390 U.S. 377, 383, 19 L.Ed. 2d [***7] 1247, 1252-53, 88 S.Ct. 967, 970 (1968).

In *Stovall v. Denno*, 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967 (1967), and in *Simmons v. United States, supra*, the United States Supreme Court set forth the standard for determining whether an in-court identification following an allegedly suggestive pretrial identification procedure satisfies the demands of due process: "[W]e hold that HN1 each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification . . . will be set aside on that ground only if the . . . identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. at 384, 19 L.Ed. 2d at 1253, 88 S.Ct. at 971.

In *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), this Court set forth the standard as follows:

> ". . . The test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental [***8] standards of decency, fairness and justice. [Citations omitted.]"

[*290] In present case, Mrs. Bost testified that on 5 May 1976 officers came to her house and requested her to come and sit in district court to see if there might be a man she could recognize as her assailant. The officers told her that they did not know who would be in court, and that she may have to come to court on two or more occasions before she could identify anyone. Mrs. Bost went to the courthouse on 10 May and talked with officers before entering the courtroom. Again, they made no suggestion to her that the defendant or anyone else in particular would be in the courtroom. They simply told her to sit in the courtroom and look around and see if she could recognize the man who raped her. Mrs. Bost entered the courtroom with her friend, a Mrs. Pfennell, and sat apart from the officers. There were as many as sixty people in the courtroom, and as many as a dozen black males. Mrs. Bost testified that when the judge called the name Ronnie Wallace Long, a name she had never heard before, a man she recognized as her assailant walked down the aisle past her. She testified that she immediately recognized [***9] him, and that, without prompting, she motioned to police that the defendant was the man. Having reviewed the totality of the circumstances surrounding the pretrial courtroom identification, we conclude that there was no constitutional violation in the manner in which it was conducted.

Mrs. Bost further testified on *voir dire* that after the courtroom identification the police took her to the station and showed her six or eight photographs, and [**731] once again, without prompting, she identified the defendant. She also testified that officers did not point out any particular picture to her, and that she recognized the defendant from seeing him at the time of the assault. Considering this testimony, we hold that there was nothing "impermissibly suggestive" surrounding the circumstances of the photographic identification of the defendant.

In *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972), the United States Supreme Court set forth certain HN2 factors to be considered in evaluating the likelihood of mistaken identification. These are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, [***10] (3) the accuracy of the witness's description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *See also State v. Legette*, 292 N.C. 44, 231 S.E. 2d 896 (1977); *State v. Henderson, supra*.

A review of the uncontradicted testimony of Mrs. Bost on *voir dire* in light of the factors set forth in *Neil v. Biggers, supra*, indicates [*291] little likelihood of mistaken identification. On *voir dire*, Mrs. Bost positively identified the defendant as her assailant. She testified that lights were on in her den, bedroom and hall, and that she got a clear look at the defendant's face in all three rooms. This testimony indicates that she had ample opportunity to view the criminal at the time of the crime, and that she carefully noted his appearance and the features of his face. Her description of the defendant on the evening of the crime was similar to his actual appearance. At her initial confrontation with the defendant in district court, she recognized the defendant as soon as he walked by her to approach the bench. She did not identify another person as [***11] her assailant and did not fail to identify the defendant at her initial confrontation with him. The lapse of time between the crime and the confrontation was fifteen days. On *voir dire* she averred that she had "no doubt in her mind whatsoever" that Ronnie Long was the man who raped her, and she said that her "identification was based on seeing him in my home."

At the conclusion of the *voir dire* hearing, the trial judge found as a fact: "[T]hat her [Mrs. Bost's] identification here in this courtroom today is free and independent of her viewing of the defendant on May the 10th, in the courtroom on that occasion, and not tainted by her viewing the defendant on that occasion; that nor was it tainted by her viewing of the photographs on May the 10th, 1976."

When the facts so found are supported by competent evidence, they are conclusive on appellate courts. *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974). Here, the court's findings were amply supported by competent evidence and are therefore conclusive on this Court.

The competency of the testimony concerning Mrs. Bost's pretrial courtroom identification and her photographic identification of defendant is a separate [***12] question. "[T]he introduction of testimony concerning an out-of-court . . . identification must be excluded where . . . the procedure used is impermissibly suggestive, even though that suggestiveness does not require exclusion of the in-court identification itself under the *Simmons* test. [Citations omitted.]" *State v. Knight*, 282 N.C. 220, 227, 192 S.E. 2d 283, 288 (1972). Since we have found that there was nothing "unnecessarily" or "impermissibly" suggestive about the pretrial identification procedures used in the present case, the evidence of the out-of-court identifications was properly admitted.

[*292] We next turn to defendant's contention that the search of his automobile at the police station was illegal and that the evidence relating to the discovery of the leather gloves and toboggan cap, and the gloves and toboggan cap themselves, were therefore erroneously admitted into evidence. Upon defendant's objection to this evidence, the trial judge correctly excused the jury and conducted a *voir dire* hearing, found facts, entered conclusions of law and ruled on the admissibility of the evidence. *State* [**732] *v. Harris*, 290 N.C. 681, 228 S.E. 2d [***13] 437 (1976); *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755, *cert. denied*, 414 U.S. 874, 38 L.Ed. 2d 114, 94 S.Ct. 157.

On *voir dire*, police officers Taylor and Lee testified that they went to defendant's home on the evening of 10 May 1976 without an arrest warrant, and requested defendant to come to the police station to answer some questions. Defendant asked if he could drive his own car to the station, and the officers agreed. Defendant then drove to the station and parked his car in the parking lot. When defendant entered the station, Officer Taylor read him his rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), and informed him that he was a suspect in a rape case. Defendant signed a form waiving his *Miranda* rights and agreed to submit to questioning without the presence of a lawyer. After the questioning, Officers Taylor and Vogler asked defendant for consent to search his automobile. Defendant agreed to the search and gave Vogler the car keys. Upon search, Vogler found a green toboggan cap under the front seat, and a pair of black leather gloves over the sun visor. At the time of his arrest, defendant was wearing [***14] a black leather jacket. Mrs. Bost described

the jacket, the toboggan cap and the gloves as similar or identical to those worn by defendant at the time of the assault. Officers Taylor and Vogler further testified that defendant was not subjected to any pressure or threats by them and that Long expressed no hesitancy or uncertainty about allowing them to search the vehicle.

Defendant Long testified on *voir dire* that the officers came to his house on the evening of 10 May 1976 and told him to come down to the station to clear up a trespassing matter. He said that while at the police station Officer Vogler asked him to empty his pockets. He did so, and Vogler took his keys and left. Defendant testified that at no time did officers request permission to search his automobile, and that he did not give anyone permission to search the vehicle. He further testified there was no coercion or pressure used on him at any time by the officers.

 **[*293]** The trial judge found that the defendant "gave his permission to Officers Vogler and Taylor to search his automobile . . . that this search was made with his permission, and the Court concludes . . . that it is proper to allow that **[***15]** evidence to be introduced here before the jury; [the court] denies the motion of the defendant to suppress this evidence."

Defendant recognizes that HN3 when a person voluntarily consents to a search by officers, he cannot later complain that his constitutional and statutory rights were violated, *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976), and that one who so consents waives the necessity of a valid search warrant. *State v. Vestal, supra*. However, defendant contends that because he was in custody at the stationhouse, consent was not voluntarily given, and since there was no probable cause to search the vehicle, the warrantless search was unconstitutional and the evidence incompetent.

HN4 For a consent search to be valid, the State has the burden of proving that consent was freely and voluntarily given, without coercion, duress or fraud. *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed. 2d 854, 93 S.Ct. 2041 (1973); *State v. Vestal, supra; State v. Little*, 270 N.C. 234, 154 S.E. 2d 61 (1967). Although the State has the burden of proving that consent was voluntarily given, the United States Supreme Court and this Court have held that *Miranda* is inapplicable **[***16]** to searches and seizures, and that it is not necessary to inform a suspect that he has the right to refuse consent. *Schneckloth v. Bustamonte, supra; State v. Frank*, 284 N.C. 137, 200 S.E. 2d 169 (1973); *State v. Vestal, supra*.

In holding that advice as to the right to refuse consent to search is not necessary, the Court in *Schneckloth* said:

> "The protections of the Fourth Amendment are of a wholly different order, and have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial. . . .
>
> ". . . **[**733]** And, unlike those constitutional guarantees that protect a defendant at trial, it cannot be said every reasonable presumption ought to be indulged against voluntary relinquishment. . . ." 412 U.S. at 242-43, 36 L.Ed. 2d at 871-72.

The defendant contends, however, that there is a difference between the non-custody consent given without advice of rights upheld in *Schneckloth*, and the in-custody consent involved in the present case. Defendant argues that the very facts and circumstances surrounding a suspect in custody are inherently coercive and tend to render any consent given by him nonvoluntary.

 **[*294]** In *Schneckloth* **[***17]**, the Court noted that its holding applied to the limited facts of that case, a pre-custody consent search, and said that a determination of the proper standard for the validity of in-custody consent searches was not required by the facts of that

case. 412 U.S. at 240, 36 L.Ed. 2d at 870-71, n. 29.

In a more recent case, *United States v. Watson*, 423 U.S. 411, 46 L.Ed. 2d 598, 96 S.Ct. 820 (1976), the United States Supreme Court appears to have extended *Schneckloth* to consent searches when the suspect is both in custody and under arrest. There the Court said:

> ". . . Moreover, the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search. Similarly, under *Schneckloth*, the absence of proof that Watson knew he could withhold his consent, though it may be a factor in the overall judgment, is not to be given controlling significance. . . .
>
> "[T]o hold that illegal coercion is made out from the fact of arrest and the failure to inform the arrestee that he could withhold consent would not be consistent with *Schneckloth* and would distort the voluntariness standard that we reaffirmed in that case." 423 U.S. at 424-25, [***18] 46 L.Ed. 2d at 609-10.

This Court held in *State v. Frank, supra*, that **HN5** a specific warning as to Fourth Amendment rights is not necessary to validate consent to a search after the defendant is in custody, and that this is especially so where, as in the present case, a defendant has been warned of his right to remain silent and right to counsel under *Miranda*. See also *United States v. Smith*, 543 F. 2d 1141 (5th Cir. 1976); *United States v. Green*, 525 F. 2d 386 (8th Cir. 1975); *United States v. Cage*, 494 F. 2d 740 (10th Cir. 1974); *United States v. Fike*, 449 F. 2d 191 (5th Cir. 1971). Therefore, in accord with the United States Supreme Court decision in *Watson*, we make no definitive distinction between pre-custody and in-custody consent searches. Rather, we hold that the added factor of custody is a circumstance to be taken into account with all other surrounding circumstances in determining whether consent was freely and voluntarily given in the absence of coercion. Upon the *voir dire* to determine the voluntariness of defendant's consent to a search of his property, the weight to be given the evidence is peculiarly a determination for the trial judge, [***19] and his findings are conclusive when supported by competent evidence. *State v. Little, supra*. In our opinion, the evidence in present case supports the trial judge's findings, and the findings [*295] support the conclusions and rulings. This assignment of error is overruled.

Defendant alleges that the trial court committed error by admitting evidence and testimony as to a shoe print lifted from the banister of the front porch of the victim's home. On *voir dire*, Officer Van Isenhour testified that he lifted the shoe print from the banister the day after the crime. He further testified that there were numerous other scuff marks in the painted surface of the banister and on up the post leading to the roof of the house. Earlier, there was testimony by Mrs. Bost and officers that the defendant probably entered the house by way of an unlocked second story window above the front porch. The window was found opened by police the evening of the crime. Officer Isenhour testified on cross-examination that the shoe print could have been made as much as a month prior to the crime. During the trial, S.B.I. Agent Dennis [**734] Mooney, an expert on prints, testified that [***20] the shoe print could have been made by shoes worn by and taken from defendant at the time of his arrest.

At the conclusion of the *voir dire*, the trial judge found facts as follows:

> "At this time, I find that these footprints, from the testimony of this officer on voir dire, were found on the corner of the bannister column which is eight and a half to ten feet above the ground; four and a half feet above the porch; one and a half feet to one and three quarter feet above the bannister on the corner of the porch post; that this is a place ordinarily where footprints would not appear on a house; that in addition, there were scuff marks on the post leading up to the corner of the roof of

the porch, near the roof of the porch; that this roof is the roof from which the person who assaulted Mrs. Bost on the 25th day of April . . . made the entry into the house. . . ."

The trial court then concluded that the evidence of the shoe print was admissible.

Defendant insists that since the shoe print could have been made as much as a month prior to the crime, its admission was error, and that under *State v. Palmer*, 230 N.C. 205, 52 S.E. 2d 908 (1949), it was nonprobative evidence **[\*\*\*21]** which should not have been presented to the jury. Defendant's reliance on *Palmer* is misplaced. *Palmer* dealt with the weight to be assigned the evidence of the shoe print in determining a motion for nonsuit, not its admissibility. The **[\*296]** admissibility of the evidence of the shoe print was not raised on appeal.

**HN6** Evidence of shoe prints leading to or from the scene of the crime and corresponding with those of the accused may be admitted into evidence as tending more or less strongly to connect the accused with the crime. Stansbury, North Carolina Evidence § 85, pp. 263-65 (Brandis rev. 1973); *State v. Lewis*, 281 N.C. 564, 189 S.E. 2d 216 (1972); *State v. Pinyatello*, 272 N.C. 312, 158 S.E. 2d 596 (1968); *State v. Warren*, 228 N.C. 22, 44 S.E. 2d 207 (1947). Although both Officers Van Isenhour and Mooney admitted on cross-examination that the shoe print could have been made a month prior to the crime, Officer Mooney's testimony on direct examination that the shoe print corresponded with shoes taken from defendant at the time of his arrest was clearly competent as tending to connect the accused with the crime. The question whether the shoe print could have **[\*\*\*22]** been impressed only at the time the crime was committed is a question of fact for the jury, not a question of law to be determined by the court prior to the admission of the evidence. *State v. Irick*, 291 N.C. 480, 231 S.E. 2d 833 (1977). We therefore hold that this evidence was properly admitted.

Evidence of defendant's guilt was clear. His convictions result from a trial free from prejudicial error. The verdicts and judgments of the trial court must therefore be upheld.

No error.

Service: **Get by LEXSEE®**
Citation: **293 N.C. 286**
View: Full
Date/Time: Tuesday, February 28, 2012 - 12:00 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.